IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

SHELLEY JACKSON,                              )
                                              )
    Plaintiff/Counterclaim Defendant,      )
                                              )
v.                                            )
                                              )   Case No. 20-CV-000344-GKF-SH
ELYNX TECHNOLOGIES, LLC and                   )
SAMANTHA MCPHETER,                            )
                                              )
    Defendants/Counterclaim Plaintiffs.    )

**OPINION AND ORDER**

Plaintiff Shelley Jackson brings this suit under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101 *et seq.* (ERISA), asserting that defendants eLynx Technologies, LLC and Samantha McPheter improperly delayed providing Jackson documents and information related to an ERISA employee benefit plan provided by eLynx. For the reasons set forth below, the court grants judgment in favor of plaintiff Shelley Jackson against defendant eLynx as to her claims against it. However, the court grants judgment in favor of defendant Samantha McPheter and against plaintiff Shelley Jackson as to Jackson's claims against McPheter. Defendants' Counterclaim is moot.

**Background/Procedural History**

Plaintiff Shelley Jackson is the widow of Stephen E. Jackson. Mr. Jackson co-founded eLynx and, until December of 2019, served as eLynx's Chief Executive Officer. As such, Mr. Jackson participated in eLynx's employee benefit plan, a 401(k). McPheter currently serves as eLynx's Chief Executive Officer.

Ms. Jackson initiated this litigation on July 17, 2020, alleging that eLynx and McPheter breached the fiduciary duties owed to her in the following ways: (1) failing and refusing to provide

plan documents and information to Ms. Jackson upon request; (2) allowing a purported beneficiary designation change from Ms. Jackson, contrary to the terms of the Plan and ERISA; and (3) preventing Ms. Jackson from obtaining survivor benefits owed to her under the eLynx 401(k) Plan. [Doc. 2].

On September 30, 2020, Ms. Jackson filed a First Amended Complaint, which narrowed the scope of her claims. Specifically, in the amended pleading, Ms. Jackson alleges that eLynx and McPheter breached their fiduciary duties only by failing to provide plan documents, resulting in a delay in her receipt of survivor benefits. [Doc. 17]. The Amended Complaint includes a request for declaratory judgment that eLynx and McPheter "unreasonably delayed performance of their obligation to provide [Ms. Jackson] with plan documents and information regarding the 401(k) Plan," and demands statutory penalties in the amount of $110 per day, plus attorney's fees and costs. [Doc. 17, pp. 8-9].

On October 15, 2020, eLynx and McPheter filed a Counterclaim for Declaratory Judgment seeking a judgment establishing the following: (1) defendants' delayed delivery of documents does not constitute unjustifiable delay providing plan documents associated with the 401(k) account of Stephen Jackson; (2) a declaratory judgment establishing that defendants' delay in providing plan documents associated with the 401(k) account of Stephen Jackson was justified and not in bad faith; and (3) a declaratory judgment establishing that plaintiff was not prejudiced in the delay in providing the plan documents associated with the 401(k) account of Stephen Jackson. [Doc. 21].

Pursuant to the court's ERISA Scheduling Order, on January 15, 2021, the parties jointly submitted the administrative record. [Doc. 26]. Ms. Jackson subsequently filed an Opening Brief seeking judgment in her favor as to her claims. [Doc. 27]. Specifically, in the Opening Brief, Ms.

Jackson requests the court enter an order: (1) declaring that defendants unlawfully refused, neglected, and delayed to provide Ms. Jackson with plan documents and information regarding Stephen Jackson's 401(k) Plan through eLynx; (2) declaring that Ms. Jackson is entitled to the maximum fine for delay, as set forth in the 401(k) Plan and as allowed by ERISA, from the date of her written request on May 18, 2020 until August 20, 2020 when eLynx provided 401(k) information to her counsel; and (3) an award of the costs of this action and reasonable attorney's fees. [Doc. 27, p. 13]. eLynx and McPheter filed a response in opposition [Doc. 28], and Jackson filed a reply [Doc. 29]. Thus, the matter is ripe for the court's determination.

## Undisputed Facts[1]

As previously stated, Ms. Jackson is the widow of Stephen E. Jackson. Mr. and Ms. Jackson were married for fifty (50) years, until Mr. Jackson died on January 27, 2020. [Doc. 27, p. 2, ¶ 1; Doc. 28, p. 2, ¶ 1]. Mr. Jackson's probate estate is currently pending in Tulsa County case number PB-2020-165, and a related trust action is also pending in Tulsa County case number PT-2020-27. [Doc. 27, p. 2, ¶ 2; Doc. 28, p. 2, ¶ 2]. On May 11, 2020, Malcolm McCollam was appointed as the Special Administrator of the Estate of Stephen E. Jackson in the probate case. [JAR.000007-JAR.000008].

---

[1] The court typically does not apply the summary judgment process of Fed. R. Civ. P. 56 to an ERISA claim. *See* [Doc. 24]. However, in their briefs, the parties generally utilize the summary judgment procedure set forth in Local Civil Rule 56-1. For ease of analysis, the court treats the facts as undisputed and proceeds to analyze whether judgment is warranted. *See, e.g., Shafer v. Metro. Life Ins. Co.*, No. 14-CV-00656-RM-KMT, 2015 WL 4055473, at *8 (D. Colo. July 2, 2015); *Spradley v. Owens-Illinois Hourly Emps. Welfare Benefit Plan*, No. CIV-09-460-RAW, 2010 WL 4683578 (E.D Okla. Nov. 10, 2010). Regardless of the procedure applied, Ms. Jackson is not entitled to a jury trial. *See Brown v. Aetna Life Ins. Co.*, 975 F. Supp. 2d 610, 630 (W.D. Tex. 2013) (collecting cases).

At the time of his death, Mr. and Mrs. Jackson were involved in a divorce action, filed on December 18, 2018, and styled *Stephen Jackson v. Shelley Jackson*, Tulsa County Case No. FD-2018-2939. The divorce action was not resolved prior to Mr. Jackson's death on January 27, 2020. [Doc. 27, p. 2, ¶ 3; Doc. 28, p. 2, ¶ 3].

eLynx is an Oklahoma limited liability, and McPheter is the current Chief Executive Officer. eLynx provides an employee benefit plan as defined by 29 U.S.C. § 1003, which is governed by ERISA. [Doc. 27, p. 2, ¶ 5; Doc. 28, p. 3, ¶ 5]. Until December of 2019, Mr. Jackson was the CEO of eLynx and, as such, was a participant in eLynx's employee benefit plan ("401(k) Plan"). [Doc. 27, p. 3, ¶ 6; Doc. 28, p. 3, ¶ 6]. ELynx Technologies, LLC is the designated Plan Administrator for the 401(k) Plan. [JAR.000025].

On May 11, 2020, Tulsa County District Judge Kurt G. Glassco ordered Ms. Jackson and eLynx to mediation before J. Douglas Mann no later than June 10, 2020 in the probate action. [JAR.000008]. On May 18, 2020, Bryan J. Nowlin, counsel for Ms. Jackson, sent correspondence to counsel for eLynx—Joel Wohlgemuth and Chad Kutmas—requesting information as to the status of Mr. Jackson's account for the 401(k) Plan. [JAR.000010]. The correspondence stated: "To date, [Ms. Jackson] has not received any paperwork from eLynx or its Plan Administrator regarding her any [*sic*] transfer on death provisions." [*Id.*]. Additionally, Ms. Jackson's counsel requested the following: (1) all documents designating the beneficiary to Stephen E. Jackson's 401(k) account, including any documents which purported to alter said beneficiary, and (2) a copy of the 401(k) plan in effect on the date of Mr. Jackson's death. [*Id.*]. Jackson's counsel "cc'ed" mediator Doug Mann on the correspondence. [*Id.*].

The next day, May 19, 2020, Mr. Wohlgemuth responded to Mr. Nowlin's correspondence. [JAR.000011]. Therein, Mr. Wohlgemuth noted that "Oklahoma mediation statutes do not provide

for, nor do they contemplate, pre-mediation discovery." [*Id.*]. Instead, Mr. Wohlgemuth stated that eLynx's mediation statement "shall contain all materials and information relevant to the various claims you have asserted." [*Id.*]. There is no indication that any materials were enclosed with the letter. [*Id.*].

On June 24, 2020, Mr. Nowlin again wrote to Mssrs. Wohlgemuth and Kutmas. [JAR.000015]. That correspondence began with Mr. Nowlin's observation that

> eLynx declined to respond with any information to my original May 18, 2020 letter seeking information regarding Mr. Jackson's 401(k) Plan. If Mr. Heyman and Ms. McPheter desired to build confidence, they could and would authorize eLynx to inform Mrs. Jackson of this information so that we can at least remove one issue from the vast unknowns which deeply trouble Mrs. Jackson.

[*Id.*]. The letter also included a request that eLynx produce the following: (1) documents designating the beneficiary to Stephen E. Jackson's 401(k) account, including any documents which purported to alter said beneficiary, and (2) a copy of the 401(k) plan document in effect on the date of Mr. Jackson's death. [*Id.*].

Mr. Wohlgemuth responded that same day as follows: "After the aberrational behavior and destructive conduct of your client from the outset, don't ever ask us to do anything to 'build confidence'. That's truly ridiculous. Your request is rejected." [JAR.000014].

On August 13, 2020, Allison Wright, of IMA Wealth, sent an email to Jamie Lalumendre, eLynx human resources director, confirming that eLynx had found a completed beneficiary form for Stephen Jackson naming Ms. Jackson as the primary beneficiary and noting that, even if there was no beneficiary on file, "the spouse is automatically deemed to be the beneficiary." [JAR.000017]. The next day, on August 14, 2020, Lalumendre forwarded Wright's email to Special Administrator McCollam. [*Id.*]. Lalumendre asked McCollam to "read Allison's email

below and let me know your thoughts." [*Id.*]. On August 17, 2020, Wright emailed Lalumendre as follows:

> Thank you, Jamie.
>
> Additionally, as we discussed, the determined beneficiary can take a distribution of the account or put the account in his/her name and access the account online as it remains at Fidelity. Per Fidelity, whatever option the beneficiary chooses, Mr. Jackson's account will need to be updated and a transfer of death request put in on PSW.

[JAR.000019].

On August 20, 2020, Mr. Kutmas sent written correspondence to Ms. Jackson's counsel in the probate action. [JAR.000020]. The August 20 correspondence enclosed the Summary Plan Document for eLynx Technologies' 401(k) Plan, as well as the August 13, August 14, and August 17, 2020 emails between Wright, Lalumendre, and McCollam. [*Id.*]. Therein, Kutmas also stated that he had met with Special Administrator McCollam and "confirmed that the estate of Stephen Jackson does not have any interest in this 401k account." [*Id.*].

## Analysis

As previously stated, Ms. Jackson requests as an order declaring that defendants unlawfully refused, neglected, and delayed to provide her with plan documents and information regarding the eLynx 401(k) Plan and directing imposition of the maximum fine of $110 from the date of her first written request on May 18, 2020 until August 20, 2020.[2] [Doc. 27, p. 13].

---

[2] In the Opening Brief, Ms. Jackson also argues that eLynx and McPheter breached their fiduciary duties by allowing for, or facilitating, an unauthorized beneficiary designation change or leading Ms. Jackson to believe that such a beneficiary designation change had occurred. Thus, Ms. Jackson argues she "is entitled to an award of damages resulting from same." [Doc. 27, p. 9]. However, Ms. Jackson offers no evidence that either eLynx or McPheter facilitated an unauthorized beneficiary designation change or led Ms. Jackson to believe that such change occurred. Rather, the Administrative Record indicates that there was no change to the beneficiary designation. Moreover, "courts have consistently held that [29 U.S.C. § 1132(a)(1)(B), (3)(B)]

*A.  Liability Analysis*

Pursuant to 29 U.S.C. § 1024, "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4) (internal footnote omitted). Any administrator who fails to provide the requested information within thirty (30) days "may *in the court's discretion* be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1) (emphasis added). The maximum penalty has subsequently been increased to $110 per day. 29 C.F.R. § 2575.502c-1. Sections 1024 and 1132 "were included in ERISA so that plan participants and beneficiaries would be in a position to make informed decisions about how best to protect their rights." *Moothart v. Bell*, 21 F.3d 1499, 1503 (10th Cir. 1994).

Defendants contend that Ms. Jackson cannot establish a valid breach of fiduciary duty claim because the ERISA statutes only permit personal liability for losses *to the plan* caused by the breach of fiduciary duty. *See* [Doc. 28, p. 8]. However, it is well-established that § 1132 "authorize[s] recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *LaRue v. DeWolff, Boberg & Assocs., Inc.,* 552 U.S. 248, 256 (2008); *see also Holdeman v. Devine*, 572 F.3d 1190, 1193 (10th Cir. 2009) ("And section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), provides that beneficiaries of the plan may bring a private cause

---

does not authorize an award of extracontractual compensatory damages." *Alexander v Anheuser-Busch Cos.*, 990 F.2d 536, 539-40 (10th Cir. 1993) (collecting cases); *see also Jenkins-Dyer v. Exxon Mobil Corp.,* 651 F. App'x 810, 818-19 (10th Cir. 2016) (unpublished). Thus, Ms. Jackson is not entitled to judgment in this respect.

of action against a fiduciary to enforce [29 U.S.C. § 1109]."). The administrative record demonstrates that Ms. Jackson is a beneficiary of the 401(k) Plan. Thus, she may individually bring suit for breach of fiduciary duty.

Defendants next contend that McPheter cannot be personally liable for any alleged breach because she was not the Plan Administrator. In contrast, Ms. Jackson argues that Ms. McPheter qualifies as a fiduciary (and therefore may be personally liable) because she had "discretionary authority or discretionary responsibility in the administration" of the eLynx 401(k) Plan. [Doc. 27, p. 10; Doc. 29, p. 3].

Generally, only the plan administrator may be personally liable for a breach of fiduciary duty in failing to provide requested documents. *See Wilcott v. Matlack, Inc.,* 64 F.3d 1458, 1461-62 (10th Cir. 1995); *Averhart v. US WEST Mgmt. Pension Plan*, 46 F.3d 1480, 1489 (10th Cir. 1994). ERISA defines "administrator" as follows:

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). Where a plan designates a specific administrator, the designation "is conclusive for purposes of applying § 1132(c) and cannot be expanded or modified." *Averhart,* 46 F.3d at 1489; *see also McKinsey v. Sentry Ins.,* 986 F.2d 401, 404 (10th Cir. 1993) ("Section 1002(16)(A) provides that if a plan specifically designates a plan administrator, then that individual or entity is the plan administrator for purposes of ERISA. The statutory language is clear and unambiguous, and admits of no other interpretation."). Thus, "even where 'company personnel other than the plan administrator routinely assume responsibility for answering requests

from plan participants and beneficiaries . . . [t]he statutory liability for failing to provide requested information remains with the designated plan administrator . . ., not with the employer or its other employees.'" *Averhart,* 46 F.3d at 1489-90.

Here, the Plan designates ELynx Technologies, LLC as the Plan Administrator. [JAR.000024]. This designation is conclusive and cannot be expanded to include Ms. McPheter, regardless of any responsibilities she may have assumed with respect to the eLynx 401(k) Plan.[3]

To support the imposition of personal liability on Ms. McPheter, Ms. Jackson relies on a decision by another court in this district, *Womack v. Orchids Paper Products Company 401(k) Savings Plan*, 769 F. Supp. 2d 1322 (N.D. Okla. 2011). There, the court concluded that the Chief Executive Officer and the Chief Financial Officer of the designated plan administrator were ERISA fiduciaries. But in that case, the individuals were identified *in the Plan* as persons designated by the administrator "to act as Administrator for the Plan or to whom authority has been delegated by such Administrator," as permitted by 29 U.S.C. § 1105. *Id.* at 1131-32; *see also* 29 U.S.C. § 1105(c)(1) ("The instrument under which a plan is maintained may expressly provide for procedures . . . for named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan."). No such designation has been made here. Further, *Womack* did not involve a claim under § 1132(c).

For all of these reasons, defendant Samantha McPheter cannot be personally liable as a matter of law. Accordingly, McPheter is entitled to judgment in her favor.

With respect to eLynx, however, the administrative record demonstrates that eLynx was the designated Plan Administrator. eLynx argues that "[Ms. Jackson] never made a proper request

---

[3] Further, the Administrative Record includes *no evidence* that Ms. McPheter assumed any responsibility with respect to the 401(k) Plan.

for documents to the human resource department of eLynx," but, "instead . . . directed her litigation counsel to make discovery requests for these 401k plan documents to litigation counsel for Defendants" in pending probate actions. [Doc. 28, p. 1]. eLynx is correct that the request was unusual, as it was made from litigation counsel to litigation counsel in hotly disputed proceedings and defendants' litigation counsel was focused on the fact that discovery stays had been entered in the pending litigation due to court-ordered mediation. However, the May 18 and June 24 letters from Ms. Jackson's counsel referenced the 401(k) Plan and <u>not</u> the probate or trust actions. [JAR.000010 , JAR.000015].

Under federal law, the May 18, 2020 letter constitutes a request to the Plan Administrator, even though directed to eLynx's counsel, because the administrative record includes evidence that Norman Wohlgemuth represented eLynx regarding Mr. Jackson's estate and the firm was involved in issues related to the Plan. *See Boone v. Leavenworth Anesthesia, Inc.*, 20 F.3d 1108, 1109-10 n.2 (10th Cir. 1994); *see also* [JAR.000001 to JAR.000009; JAR.000017 to JAR.000020]. Moreover, to the extent the request was made by plaintiff's counsel, Oklahoma Rules of Professional Conduct 4.2 prohibited Ms. Jackson's counsel from contacting eLynx directly regarding matters arguably related to Mr. Jackson's estate. *See* Ok. R. Pro. Conduct 4.2 ("In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."). Thus, the May 18, 2020 letter constitute a proper request for documents to the Plan Administrator.

Further, based on the administrative record, the court finds eLynx failed to provide information requested by Ms. Jackson to which she was entitled within thirty (30) days of the

request, including a plan description. Thus, eLynx violated 29 U.S.C. § 1024(b)(4) and may be subject to § 1132(c)'s statutory penalty.

    B.  *Discretionary Statutory Penalty*

As previously stated, any administrator who fails to provide certain requested information within thirty (30) days of the request may, in the court's discretion, be personally liable in the amount of up to $110 a day from the date of the alleged failure. 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1. In determining whether to exercise its discretion, "[t]he focus is necessarily on the plan administrator's actions, not the participant's." *Moothart*, 21 F.3d at 1507; *see also id.* (quoting *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494 (11th Cir. 1993)) ("[S]ection 1132(c) is intended to punish noncompliance with the employer or administrator's disclosure obligations and not to compensate the participant."). While "neither prejudice nor bad faith is required for a district court to impose penalties under 29 U.S.C. § 1132(c), the presence or absence of these factors can certainly be taken into account by a district court in deciding whether to exercise its discretion and impose a penalty." *Deboard v. Sunshine Min. & Refining Co.*, 208 F.3d 1228, 1244 (10th Cir. 2000) (citing *Moothart,* 21 F.3d at 1506). Other relevant factors include: "[1] the length of the delay; [2] the number of requests made; and [3] the extent and importance of the documents withheld." *M.S., L.S., and C.J.S. v. Premera Blue Cross*, No. 19-CV-00199-RJS-CMR, 2021 WL 3511094, at *24 (D. Utah Aug. 10, 2021) (quoting *McDonald v. Pension Plan of NYSA-ILA Pension Tr. Fund*, 320 F.3d 151, 163 (2d Cir. 2003)). "The imposition of penalties is committed by statute to the discretion of the trial court" and the decision will not be overturned "absent an abuse of discretion." *Boone*, 20 F.3d at 1111.

Looking first to prejudice, Ms. Jackson contends that she was prejudiced because eLynx's delay forced her to initiate this lawsuit to recover Plan information and, ultimately, benefits. There

can be no dispute that Ms. Jackson did not receive the Plan summary and information regarding Mr. Jackson's beneficiary designation until after she initiated this litigation. The delay interfered with Ms. Jackson's ability to understand her rights under the 401(k) Plan. Further, in light of counsel for eLynx's response to the June 24, 2020 correspondence, it was not unreasonable for Ms. Jackson to view litigation as necessary to obtain the requested documents.[4] *See* [JAR.000014]. However, this concern is somewhat mitigated, as the record also suggests that the instant lawsuit was driven, in part, by the heavily-contested probate action.

Ms. Jackson also asserts prejudice in the form of the delay in receipt Plan benefits. However, eLynx correctly points out that the 401(k) assets actually appreciated during the relevant timeframe. *See* [Doc. 28, p. 10].

With respect to bad faith, Ms. Jackson points to eLynx's outright rejection of her request. [JAR.000014]. In response, eLynx urges the court to consider the context of the request—specifically, that the first demand for information came days after the parties were ordered to mediation in the probate action and Ms. Jackson copied mediator Mann on the correspondence. As previously stated, the court concurs that the request was made in an unusual manner by litigation counsel to opposing litigation counsel during a discovery stay in that litigation. But it is clear that, regardless of the context, the request was proper Ms. Jackson was entitled to the requested information. And there is no indication in the administrative record that eLynx was attempting to obtain the requested information prior to August 13, 2020.[5] *See generally* [Doc. 26].

---

[4] eLynx contends that its counsel's statements cannot be attributed to it. However, the actions of eLynx's agents may be imputed to it as plan administrator. *McKinsey,* 986 F.2d at 404-05.

[5] In its response, eLynx asks the court to consider a series of emails that were not included in the administrative record, but that eLynx attaches as Exhibit 1. *See generally* [Doc. 28-1]. However, "[i]n ERISA cases, [the court's] review is confined to the administrative record." *Adamson v.*

As for the other factors, ninety-four total days lapsed from Ms. Jackson's first request to when she ultimately received the requested documents. Excluding the thirty days permitted by statute as well as the day on which she received the documents, this amounts to sixty-three days during which the Administrator failed to provide the requested information. Further, the administrative record includes two requests by Ms. Jackson prior to initiating this litigation. Finally, as previously stated, the documents included the 401(k) Summary Plan, which is a document of vital significance to Ms. Jackson's claim.

Weighing the foregoing factors, the court exercises its discretion to award a statutory penalty of $35.00 per day, amounting to a total award of $2.205.00. The court reached the total award by multiplying $35.00 by 63 (the total number of days the documents were withheld starting from the 31st day after the first request). *See Bartling v. Fruehauf Corp.,* 29 F.3d 1062, 1069 (6th Cir. 1994) ("[M]ost of the district courts that have considered the question have held that § 1132(c)(1) penalty calculations begin only 31 days after the plaintiffs made their document requests."); *Williams v. NASDAQ OMX Flexible Benefits Program,* No. 13-CV-00125-DN, 2014 WL 5819561, at *5 (D. Utah Nov. 10, 2014) ("If a plan administrator refuses or fails to deliver plan documents after it receives a request, the court, in its discretion, may assess a daily penalty to the plan administrator, starting thirty days after the plan administrator failed to meet the request.").

C.   Counterclaim

As previously stated, eLynx and McPheter filed a Counterclaim for Declaratory Judgment seeking judgment establishing the following: (1) defendants' delayed delivery of documents does

---

*UNUM Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006); *see also Philippus v. Aetna Life. Ins. Co.*, No. 07-CV-02682-JLK-KLM, 2010 WL 3075485, at *3 (D. Colo. June 10, 2010). Thus, the court does not consider Exhibit 1.

not constitute unjustifiable delay providing plan documents associated with the 401(k) account of Stephen Jackson; (2) a declaratory judgment establishing that defendants' delay in providing plan documents associated with the 401(k) account of Stephen Jackson was justified and not in bad faith; and (3) a declaratory judgment establishing that plaintiff was not prejudiced in the delay in providing the plan documents associated with the 401(k) account of Stephen Jackson. [Doc. 21]. However, in light of the court's rulings on Jackson's claims, above, the requested declaratory relief is moot. *See* 27A Federal Procedure, Lawyer's Edition, § 62:206 (June 2021 update) ("A counterclaim for declaratory relief may become redundant and moot upon the disposition of the complaint, where it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim."); *Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975).

### D. Attorney's Fees and Costs

Both plaintiff and defendants seek attorney fees. Pursuant to ERISA, in an action by a beneficiary, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). The Tenth Circuit has stated:

> In deciding whether to exercise its discretion and award fees, a district court should consider the following nonexclusive list of factors: (1) the degree of the offending party's culpability or bad faith; (2) the degree of the ability of the offending party to satisfy an award of attorney fees; (3) whether or not an award of attorney fees against the offending party would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions.

*Deboard,* 208 F.3d at 1244. Further, the court must bear in mind that "courts should not grant attorney's fees under ERISA as a matter of course." *McGee v. Equicor-Equitable HCA Corp.*, 953 F.2d 1192, 1209 (10th Cir. 1992) (internal quotations omitted).

Looking first to Ms. Jackson's request for attorney fees, as previously stated, eLynx is culpable for failure to provide the requested information. The parties offer no information with

respect to second factor. With respect to the third factor, an award of attorney fees in this case may serve to deter other persons acting under similar circumstances. It does not appear that any benefit will be conferred on the members of the plan as a whole. Finally, Ms. Jackson's claim under § 1132(c) was meritorious and she had to file this action in order to obtain the plan documents. However, Ms. Jackson originally filed this action seeking, not only the Plan documents and information, but challenging a purported beneficiary designation change, as well as seeking survivor benefits under the 401(k) Plan. Weighing these factors, the court will exercise its discretion and award Ms. Jackson reasonable attorney fees and costs limited to Ms. Jackson's claim for Plan documents and information up to August 20, 2020, the date eLynx provided Plan documents to Ms. Jackson.

With respect to Ms. McPheter's request for attorney fees, Ms. Jackson had a good faith basis to assert claims against McPheter and therefore Ms. Jackson did not act in bad faith. The parties offer no information as to the second factor. An award of attorney fees is unlikely to act as a deterrent because claims as between Ms. Jackson and Ms. McPheter appear inextricably tied to the factual circumstances. Again, it does not appear that any benefit will be conferred to the plan as a whole. And as previously stated, Ms. Jackson's claims were not frivolous or in bad faith, although ultimately unsuccessful. Weighing these factors, the court concludes that an award of attorney fees against Ms. Jackson and in favor of Ms. McPheter is not warranted.

Finally, as for eLynx's request for attorney fees, eLynx did not succeed on the merits and is not entitled to attorney fees.

## Conclusion

WHEREFORE, judgment shall be entered in this matter as follows: (1) in favor of plaintiff Shelley Jackson and against defendant eLynx Technologies, LLC in the amount of $2,205.00 and (2) in favor of defendant Samantha McPheter and against plaintiff Shelley Jackson.

IT IS FURTHER ORDERED that defendants' Counterclaim is moot.

IT IS FURTHER ORDERED that plaintiff Shelley Jackson is entitled to reasonable attorney fees and costs incurred in this action related to her claim for Plan documents and information up to August 20, 2020, upon application filed on or before September 13, 2021. The requests of defendants eLynx Technologies, LLC and Samantha McPheter for attorney fees are denied.

DATED this 17th day of August, 2021.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE